UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                        Case No. 19-20841

REGINALD FULTON,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant Reginald Fulton moves to suppress the use of evidence obtained during the search of his residence. (ECF No. 29.) The government has filed a response. (ECF No. 32.) Defendant argues that the search warrant for his residence was based on unverified information from an unknown middleman-drug customer and was in any event insufficient to establish probable cause. However, as explained below, the search warrant is predicated on the testimony of a reliable confidential informant and the independent corroboration of special agents. No material facts are disputed. No evidentiary hearing is necessary. E.D. Mich. L.R. 7.1(f)(2). The court will deny Defendant's motion because it concludes that there existed probable cause for the magistrate to issue the search warrant.

## I. BACKGROUND

In July 2019, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) received a tip from a confidential informant ("CI") that indicated Defendant was involved in a criminal scheme to distribute heroin in Detroit. (ECF No.

32-2, PageID.124.) This CI was well-known to the ATF agent. (*Id.*) The CI had provided useful information to the ATF over 50 times, and some of that information had led to several successful arrests and prosecutions. (*Id.*)

In August 2019, ATF special agents conducted three separate controlled purchases of heroin using the CI as the apparent heroin purchaser. (ECF No. 32-2, PageID.125-29.) Each time, the CI called the same middleman to arrange a purchase. ATF special agents listened in on the calls. (*Id.*) During each call, with ATF agents listening, the middleman stated that he would pick up the heroin from the "target location," later identified to be the residence of Defendant. (*Id.* at PageID.126.) The CI would arrange to meet the middleman at a predetermined location and, each time, the CI was instructed by the middleman to drive to Defendant's residence. (*Id.* at PageID.127–129.) Upon arrival, the middleman would enter Defendant's residence and stay for a few minutes before exiting and immediately handing the CI what appeared to be heroin, as observed by the surveilling ATF special agents. (*Id.*)

In all three purchases, ATF special agents observed the entire purchase, from start to finish. (*Id.*) A nearly identical pattern emerged during the purchases; the CI was required to drive to Defendant's residence for each purchase. (*Id.*)

After the three purchases, an ATF special agent involved in the investigation applied for a search warrant and described these events in an affidavit. (ECF No. 32-2.) The affidavit posits that Defendant may be using his residence "to store and distribute heroin." (*Id.* at PageID.124.) A search warrant was issued for Defendant's residence. During the subsequent search, agents recovered, "three loaded firearms, an extended magazine, additional ammunition, over 70 grams of heroin, approximately 20 grams of

marijuana, additional drug paraphernalia, and proof of residency documents with Fulton's name and the [residence] address." (ECF No. 32, PageID.106.)

## II. STANDARD

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The purpose of the Fourth Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528 (1967)). "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)).

When an application for a search warrant is presented, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Id.* The reviewing court should not engage in, "*de novo* review." *Id.* at 236. The Sixth Circuit, "has long held that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). This deferential standard "further[s] the Fourth Amendment's

3

strong preference for searches conducted pursuant to a warrant." *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984).

When reviewing an affidavit for sufficiency, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen,* 211 F.3d at 975. "Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out." *Id.* at 975. "Nor is an affidavit required to present proof that would without question withstand rigorous cross-examination." *Id.*

Furthermore, probable cause exists when there is enough, "'reasonably trustworthy information' as 'to warrant a prudent man in believing that the [Defendant] committed or [is] committing an offense." *United States v. Shaw*, 464 F.3d 615, 623 (6th Cir. 2006) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The Supreme Court, "has long held that 'the term 'probable cause' . . . means less than evidence which would justify condemnation' and that a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial." *United States v. Ventresca*, 380 U.S. 102, 107 (1965) (citation omitted).

### III. DISCUSSION

Defendant's motion asks the court to suppress evidence and the court presumes that Defendant seeks to suppress the evidence collected at his residence, consisting of "three loaded firearms, an extended magazine, additional ammunition, over 70 grams of heroin, approximately 20 grams of marijuana, additional drug paraphernalia, and proof of residency documents with Fulton's name and the [residence] address." (ECF No. 32, PageID.106.) The motion also requests, in the alternative, that the court conduct an

evidentiary hearing to allow for Defendant to examine the affiant and the middleman, and potentially an *in camera* examination of the CI. The court will deny these requests.

### A.  Defendant's Motion to Suppress

Despite Defendant's assertion that the affidavit for the search warrant is premised on unreliable information from the unnamed middleman, it is clear in reading the affidavit, and drawing reasonable inferences, that the affiant and magistrate relied on the information provided by a known CI who had a history of reliability with the ATF, aided by the independent corroboration of several ATF special agents during three controlled purchases. (ECF No. 32-2.) These sources, in combination, support a finding that the affidavit was sufficient to establish probable cause irrespective of the presence of a middleman of narcotics.

The affidavit does not provide the name of the known, reliable CI the ATF used to launch its investigation, nor does the affidavit specify that the CI was revealed orally to the reviewing magistrate. However, in lieu of this information, the affidavit contains particularized information regarding the history of this particular CI's information. Specifically, this CI, said the affidavit, "has provided reliable and credible information to ATF agents over 50 times." (ECF No. 32-2, PageID.124.) This CI's, "information has led to successful seizures of firearms, narcotics, and currency, as well as several arrests and prosecutions for violations of Federal law." (*Id.*) Additionally, the corroboration by ATF agents in surveilling drug purchases in a controlled manner allows for the reasonable, common-sense conclusion that Defendant's residence contained heroin. *C.f. United States v. Weaver,* 99 F.3d 1372, 1378 (6th Cir.1996). The CI's initial tip provided *some* reliable information to suspect Defendant may be engaging in drug

5

trafficking, corroboration by the ATF adds up to a probability of Defendant's involvement in criminal activity. *See Allen*, 211 F.3d at 974 (clarifying that *Weaver* does not require that a confidential informant's tips always be independently corroborated).

Furthermore, the affiant includes the details of a controlled purchase in which she was explicitly involved and her personal knowledge of the details of that purchase. (ECF No. 32-2, PageID.128-129.) The CI called the middleman and the middleman told the CI that, "the supplier had new product and they would need to go and get it from the TARGET LOCATION" (identified as Defendant's residence). (ECF No. 32-2, PageID.128.) Another ATF special agent monitored this call. ATF special agents watched as the CI picked up the middleman, the middleman entered and exited the Defendant's residence, and then handed the suspected heroin to the CI. (*Id.*) While still being watched, the CI delivered the heroin to the affiant and another special agent at a predetermined location. (*Id.* at PageID.129.) The affiant laid out these details in her affidavit. These facts together are easily sufficient to establish probable cause. *See, e.g.*, *Bullock v. City of Detroit*, No. 19-1287, 2020 U.S. App. LEXIS 15495, at *12 (6th Cir. May 14, 2020) (quoting *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012)) ("[A] single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location."). An informative tip from a reliable CI, corroborated by one or more controlled buys observed by ATF special agents at a location that suggests a continuity of occupation or use (such as a residence or place of business), is sufficient to establish probable cause for a warranted search of such premises.

Here, as noted, the ATF conducted not just one controlled purchase corroborating the scheme, but three. (ECF No. 32-2, PageID.125-29.) The affiant includes the details of these additional controlled buys in her affidavit. (*Id.*) The affiant does not explicitly state her involvement in these other two controlled purchases but does specify where she relied on information provided from other ATF special agents. *See United States v. Perkins*, 994 F.2d 1184, 1189 (6th Cir. 1993) (quoting *United States v. Hensley*, 713 F.2d 220, 223 (6th Cir. 1983), *rev'd on other grounds*, 469 U.S. 221(1985). ("This court recognizes the general rule that 'probable cause for arrest may emanate from collective police knowledge.'"). This information related to the additional controlled buys added to the initial controlled buy provides a basis more than sufficient to establish probable cause. *Id.*; *Bullock*, 2020 U.S. App. LEXIS 15495, at *12.

Defendant points out that neither the CI nor ATF special agents are said to have actually witnessed the middleman and the Defendant, as the supplier, exchanging prerecorded cash or narcotics. (ECF No. 30, PageID.97.) However, a reasonable common-sense conclusion can be drawn that the middleman would not require the CI to drive him to Defendant's residence if it were not necessary to complete the sale. *See Gates*, 462 U.S. at 238. The agent-monitored calls from the CI to the middleman corroborate the statement that he must be driven to pick up the heroin from his "supplier." (ECF No. 32-2, PageID.128.) By consistently returning to the Defendant's residence saying that he must go to pick up heroin from his "supplier," it is entirely reasonable to infer that Defendant's residence was integral to the completed sale of heroin. These facts, all supported by the witnessing ATF special agents, establish that

7

probable cause existed to search Defendant's residence for evidence of criminal activity.

The affidavit used to obtain the search warrant in this case is directly analogous to the affidavit and search warrant upheld in *United States v. Clements*. 333 F. App'x 981 (6th Cir. 2009). In *Clements*, the affiant stated that he was contacted by a CI with whom he had an established relationship of reliability, and whose tips had resulted in successful search warrants and arrests. *Id.* at 987. The affiant then conducted one controlled purchase using the CI. *Id.* The affiant observed the CI meet a middleman at a predetermined location, then the CI drove to the defendant's residence. *Id.* at 988. The middleman entered the defendant's residence for a few minutes then exited the residence and got into the CI's vehicle. *Id.* After getting out of the CI's vehicle, detectives observed the middleman counting U.S. currency before entering another car. *Id.* Probable cause was established under these facts. *Id.*

The facts of the instant case are nearly identical to the facts of *Clements*; the small differences lend even further support to a finding of probable cause. In *Clements*, the officers conducted only one controlled purchase. *Id.* at 987–88. Here, there were three. (ECF No. 32-2, PageID.125-29.) In *Clements*, the surveilling officers did not observe the middleman hand the drugs to the CI. *Clements*, 333 F. App'x at 988. Here, agents saw the middleman hand the CI the suspected heroin. (ECF No. 32-2, PageID.125–29.)

In summary, the affidavit contained sufficiently reliable and particularized information. With the information the affiant provided, the magistrate had "a substantial basis for concluding probable cause existed." *Gates*, 462 U.S. 238–39.

## B. Defendant's Request for an Evidentiary Hearing

Defendant asks for an evidentiary hearing in lieu of granting his motion to suppress. The court denies this request.

In deciding motions to suppress, the court must hold an evidentiary hearing "if the motion [seeking the hearing] is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search area in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)); *United States v. Schumacher*, 611 F. App'x 337, 341 (6th Cir. 2015) (citations removed) ("[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."); *United States v. Thompson*, 16 F. App'x 340, 344 (6th Cir. 2001) ("A district court is required to hold an evidentiary hearing when the defendant has set forth contested issues of fact that bear upon the legality of the search."). If, however, the questions presented are "entirely legal in nature" the court may decide the motion without a hearing. *Ickes*, 922 F.3d at 710. Further, even if there are contested facts, "a district court can forgo conducting an evidentiary hearing if sufficient content remains to support a finding of [constitutionality] after the contested items are set aside." *Thompson*, 16 F. App'x at 344.

Here, the parties do not contest any of the facts that are material to the court's analysis. Defendant's motion does not dispute any of the events in the affidavit. Defendant simply posits that the middleman's reliability is unknown and that for that reason alone he is entitled to either suppression of the evidence or a chance to examine the middleman. (ECF No. 30, PageID.99-100.)

9

As noted above, the affidavit is not reliant on information from or substantive statements made by the middleman requiring a credibility assessment. The affidavit is premised on an initial tip from a CI who had repeatedly produced reliable information for ATF special agents, and the subsequent corroboration of the tip with three controlled purchases observed by multiple ATF special agents. (ECF No. 32-2, PageID.125-29.) The only mention of statements by the middleman pertained to phone calls from the CI to the middleman monitored by ATF special agents. (*Id.*) Therefore, the credibility or *reliability* of the middleman, as such, is not relevant because his statements (which, as co-conspiratorial utterances were not hearsay) were heard and later corroborated by ATF special agents. Fed. R. Evid. 801(d)(2)(E). In fact, the motion does not dispute the reliability of the CI providing the initial tip, nor the accuracy of the statements by ATF special agents regarding their observations, all of which were sufficient, in this court's estimation, to establish probable cause. No evidentiary hearing is necessary under these circumstances.

It should be noted that Defendant makes no specific mention of what type of evidentiary hearing he is requesting other than what appears to be a request to examine, or perhaps to have the court so examine, the middleman, the affiant, and possibly the confidential informant *in camera*. (ECF No. 29.) Defendant provides no legal authority to support his request for an *in camera* hearing. Requests made without legal support will not be granted. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . .

10

put flesh on its bones."). Nevertheless, to the extent Defendant is asking for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), he has failed to provide any evidence that the affidavit contains a falsity necessary to justify such a hearing. *See United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (quoting *United States v. Cummins*, 912 F.2d 98, 101, 103 (6th Cir. 1990)) ("[The Sixth Circuit's] well-settled framework for *Franks* hearings requires a defendant to 'point to specific false statements' and then 'accompany his allegations with an offer of proof'."). And to the extent Defendant seeks to examine either the CI or the middleman, he has not demonstrated that information from these individuals is essential to his case nor that the disclosure of their identities is justified under the circumstances of this case. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980) (citing *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957); *United States v. Woods*, 802 F.2d 460 (6th Cir. 1986). His request for an evidentiary hearing will be denied.

### IV. CONCLUSION

Defendant moves to suppress evidence on the contention that the middleman mentioned in the search affidavit is of unknown reliability. However, the affidavit agent makes clear that the affiant relied on an initial tip from a confidential informant with a track-record of providing useful and reliable information to the ATF, and the statements and observations of ATF special agents monitoring three controlled purchases. The affidavit was sufficient to establish probable cause to search Defendant's residence. The court will also deny Defendant's request for an evidentiary hearing because the parties do not dispute the material facts and Defendant has not made any particularized showing to warrant *in camera* proceedings. Accordingly,

IT IS ORDERED that Defendant's "Motion to Suppress Evidence, Or In The Alternative For Evidentiary Hearing" (ECF No. 29, 30) is DENIED.

s/Robert H. Cleland            /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 11, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 11, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner            /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\HEK\Civil\19-2084.FULTON.motion.to.suppress.HEK.RHC.1.docx